# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.  **06 - CV - 02150**
(To be supplied by the court)

BOTERO, JUAN, B. _____, Plaintiff,

v.

TANCREDO, THOMAS, G. _____,

_____

_____, Defendant.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

OCT 2 6 2006

GREGORY C. LANGHAM
CLERK

---

## COMPLAINT

---

(Rev. 07/06)

## PARTIES

1. Plaintiff   BOTERO, JUAN, B.   is a citizen of   The State of Colorado
   who lives at or is located at the following address:
   P.O. Box 271147, Littleton, CO 80127

2. Defendant   TANCREDO, THOMAS, G.   is a citizen of   The State of Colorado
   who lives at or is located at the following address:
   6099 South Quebec Street, Suite 200, Englewood CO 80111

(Attach a separate page, if necessary, to list additional parties.)

## JURISDICTION

4. Jurisdiction is asserted pursuant to following statutory authorities: United States Constitution, including but not limited to the First, Fourth, and Fifth Amendments (*Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics*, 403 U.S. 388 (1971)); 28 U.S.C. §1331

1. Briefly state the background of your case:

   Congressman Thomas G. Tancredo violated Plaintiff's rights of Free Speech and Political Free Speech by politicizing the US Capitol Police by stating in a false report that "he felt threatened" by a Press Release issued by Plaintiff which was addressed directly and exclusively to members of the Press. The Defendant abused his political power to suppress Plaintiff's message to the Press and members of Congress that his peers and classmates at *Holy Family High School* in North Denver are stating as first-hand witnesses that he is still pursuing personal *vendetta* against Mexicans for the altercations that he lost as a student. These statements have been made by contemporaries and classmates who witnessed or participated in these altercations. Plaintiff has also been communicating that Defendant:

   A) Is fundamentally unsuited for his current role as Chairman of the Immigration Reform Caucus due to his family and childhood roots in *North Denver*, a "tough neighborhood" (see *Rocky Mountain News* Candidate Profile from 10/17/2006) famous for the racially-based hostilities by members of the Italian community against Mexican immigrants. This phenomenon is recorded in history books about North Denver, confirming characterizations by law-enforcement personnel, natives and contemporaries of the Defendant that it was an "Italian vs. Mexican war zone."

   B) Is unsuited for his role as Chairman of the Immigration Reform Caucus due to his ongoing cover-up of the unresolved childhood traumas caused by his altercations with Mexicans. This cover-up was detected and reported by Mike Littwin of the *Rocky Mountain News*, who detailed how the Defendant wanted to address the matter, but that his associate Angela "Bay" Buchanan attempted to cut off the conversation during Defendant's recent Presidential campaign efforts in Arizona..

C) Needs to disqualify himself as Chairman of the Immigration Reform Caucus because of the fundamental role that his depression played in allowing him to obtain a 1-Y deferment during the Vietnam draft, because the Defendant's depression was caused by his altercations with Mexican nationals. In spite of disqualifying himself for the Vietnam war, Defendant has not disqualified himself for his ongoing war against Mexico. The Defendant has formally declared in his role as Congressman, in multiple written, public and electronic forums, that the United States is "at war with Mexico," confirming claims by his contemporaries that his irrational calls to take America to war against Mexico are fueled by unresolved emotional traumas and his fixation with Mexicans.

The Defendant politicized the US Capitol Police by having Plaintiff intimidated and detained for questioning in order to suppress Plaintiff's Free Speech exercise by presenting the facts about his personal motives. The Capitol Police is a Federal law enforcement agency under Defendant's authority. As a result of Defendant's false report, Plaintiff was held and questioned for approximately 4 hours on Monday, May 15th, disrupting Plaintiff's lawful business activities.

Plaintiff's Constitutional rights were violated by Federal Agents acting on Defendant's false report when personal property was confiscated and documents were copied without Plaintiff's consent.

In violation of Plaintiff's rights of Political Free Speech, Defendant directed the US Capitol Police to suppress Plaintiff's lawful activities. This directive was carried out by USCP agents who issued a verbal restraining order of sorts against Plaintiff, who was repeatedly pressured verbally to avoid any type of contact with Defendant. This directive interfered with the activities typical of a normal political campaign, which involves the open debate of ideas between incumbents and challengers in order to allow voters to compare and decide who best represents their views and who to vote for.

Defendant abused his political power as Congressman by using private information obtained by the USCP for "opposition research" purposes, with the intent of inflicting deep personal and professional humiliation upon Plaintiff who was acting lawfully as a legitimate political opponent. Plaintiff maintains that such information was disseminated through Defendant's Congressional staff to campaign associates, select members of the media and ideological supporters. Defendant has continued to misrepresent the facts about this incident to discredit Plaintiff, resulting in extremely limited, hostile and prejudiced media coverage or a media blackout of Plaintiff's campaign activities. Plaintiff's reputation as a political consultant in the Denver Metro area, his primary area of business, has been severely damaged by Defendant's actions, creating an extremely unfavorable business and political campaign climate as a direct result of Defendant's defamation.

Defendant directed a Congressional staff member to engage in multiple unlawful acts of racial profiling during several written exchanges between the staff member and Plaintiff, in direct violation of racial profiling laws enacted by Congress. Defendant's directive to his staff to inquire exclusively about Plaintiff's ethnicity was offensive, and completely ignored Plaintiff's repeated requests for dates in order to debate campaign issues with Defendant.

Defendant has grossly misrepresented Plaintiff's positions as a candidate by making knowingly false statements about Plaintiff's policy views in official communications from his reelection campaign, as well as slanderous remarks about Plaintiff as a person during public meetings with CD-6 voters.

## FIRST CLAIM FOR RELIEF
## AND SUPPORTING FACTUAL ALLEGATIONS
(Please number your paragraphs and attach any necessary additional pages.)

**Violation of my Rights of Free Speech under the United States Constitution:**

I. While acting as a United States Congressman from the State of Colorado, the Defendant committed multiple acts of infringing upon Plaintiff's rights of Free Speech while Plaintiff was acting lawfully in Alexandria, Virginia, several miles away from Defendant's office. Plaintiff was faxing Press Releases to multiple Congressional offices and media outlets, stating that Defendant is pursuing a personal agenda of revenge against Mexican nationals because of unresolved childhood traumas caused by altercations with Mexican classmates and neighbors. In order to suppress Plaintiff, Defendant unlawfully politicized by false report the United States Capitol Police, a Federal law enforcement agency under his influence. Plaintiff was aggressively contacted and detained by the US Capitol Police, and was threatened with incarceration. USCP demeanor was excessively hostile, and an agent stated that "we are not friends." Plaintiff's unlawful detention was triggered by Defendant's false and irrational assertions that "he perceived he was being threatened." Plaintiff maintains that Defendant was actually trying to suppress Plaintiff's communication of the facts, by falsely claiming that a Press Release clearly addressed by Plaintiff directly and exclusively to members of the Press actually constituted a "veiled threat." The US Capitol Police Threat Assessment Division conceded that the document was indeed directed to the Press and that it fell within Plaintiff's rights of free speech, and that the document did not pose any type of threat to Defendant. To this date, Defendant continues to make bizarre and defamatory assertions that Plaintiff issued a "veiled threat," in spite of the fact that A) he attempted to hire Plaintiff as a Consultant in October of 2003, B) that we have met numerous times in his office in a cordial, professional manner, C) that he endorsed me on official letterhead in support of a project that we agreed to pursue together and D) that the case was closed prior to his slanderous statements, and that the US Capitol Police determined that no such threat had been issued.

**Supporting Factual Allegations:**

A) Supervisory Agent David G. Wells was in charge of the USCP investigation, and confirmed to the *Rocky Mountain News* in an article published on October 5th, 2006 that an incident had occurred. The USCP pressured me to report my whereabouts routinely, to return to Denver, to call USCP upon my arrival to Denver and to "keep my distance" from the Defendant.

B) Defendant has confirmed on several occasions that an incident did occur, and falsely maintains to this day that he "feels threatened" by Plaintiff in spite of the case being closed by Capitol Police.

C) The Defendant also abused his political power by causing the USCP to intimidate members of Plaintiff's family to obtain damaging personal information in order to destroy his reputation by disseminating information to select members of the press and political supporters.

## SECOND CLAIM FOR RELIEF
## AND SUPPORTING FACTUAL ALLEGATIONS
(Please number your paragraphs and attach any necessary additional pages.)

**Violation of Plaintiff's Citizen Rights of Political Free Speech:**

I. On Friday, May 12, 2006, Defendant violated Plaintiff's rights of Political Free Speech with the purpose of preventing him from disseminating the facts related to Defendant's ongoing personal revenge against Mexican nationals as stated by his classmates and contemporaries, a trauma which started during his days at *Holy Family High School* in North Denver. The Press Releases distributed by Plaintiff provided factual information and specific details about the circumstances that traumatized Defendant during his years at *Holy Family High School*, including details regarding Defendant's childhood fistfight defeats suffered at the hands of his Mexican classmates and neighbors during his formative years as a member of an Italian gang of juveniles that was involved in numerous hostile encounters and altercations with Mexican nationals. These territorial fights were characterized by fistfights and the use of racial epithets, switchblades and knives. In order to silence Plaintiff's message in violation of his rights of Political Free Speech, Defendant falsely reported Plaintiff as a "threat" to the Capitol Police. The Defendant still maintains to this day that Plaintiff poses a physical threat, a false allegation made as recently as October 5th to the *Rocky Mountain News* by Defendant's Congressional staff, in spite of the fact that the USCP has closed the case, concluding that Plaintiff did not pose any type of threat and that his Press Release was indeed directed to the Press and fell clearly within his rights of Free Speech.

**Supporting Factual Allegations:**

A) Defendant acted in a manner that emulates Fascism. In an article written by Anne C. Mulkern of the *Denver Post* earlier this year, Congressman Tancredo openly admitted to Ms. Mulkern that he was inspired by Cuban Dictator Fidel Castro to get involved in politics. The implementation of Castro-style Fascism by suppressing a political opponent through the State Police resources is a violation of my Rights of Free Speech under the American Constitution and goes against the traditions of our Constitutional democracy. Defendant also admitted during a recent immigration forum in Denver hosted by Jon Caldara that he stays up late watching documentaries on the History Channel about Nazi Germany. The commonly-made observation that Congressman Tancredo practices Nazi-style Fascism is supported by various local and national members of the clergy, members of Denver's Jewish community and by immigration attorneys who are familiar with his incendiary rhetoric and consistently punitive demeanor against Mexicans.

B) Since February 24th of 2006, Defendant has repeatedly denied Plaintiff the opportunity to debate him on the issues of Healthcare, Education, the Economy, Technology and Immigration Reform. Plaintiff has made repeated requests in writing, by telephone and in person, always in cordial tones, with no response from Defendant or his staff. The practice of denying the open debate of campaign issues in the free marketplace of ideas is in line with Defendant's open admissions to being fascinated by Fascism. The denial of Political Free Speech is contrary to our political traditions, and the importation and application of Fascism is contrary to our nation's traditions and best interest.

## THIRD CLAIM FOR RELIEF
## AND SUPPORTING FACTUAL ALLEGATIONS

(Please number your paragraphs and attach any necessary additional pages.)

**Violation of my Right to Privacy under the United States Constitution:**

I. Federal Law Enforcement resources, acting under Defendant's orders in his official capacity as a US Congressman, conducted the unlawful seizure of Plaintiff's personal property while Plaintiff was conducting legitimate and lawful business activities in Washington DC, and copies of personal documentation were made without Plaintiff's prior consent.

**Supporting Factual Allegations:**

A) As a direct result of Defendant's manipulation of the US Capitol Police through false report, my personal property was improperly searched, and copies were made of personal documents without prior consent. Plaintiff allowed voluntarily to have his personal belongings searched when he was detained by USCP agents, but did not consent to his property being confiscated and copied without his consent when he was driven away to USCP headquarters for questioning.

## FOURTH CLAIM FOR RELIEF
## AND SUPPORTING FACTUAL ALLEGATIONS

(Please number your paragraphs and attach any necessary additional pages.)

**Violation of my Constitutional and Civil Rights by being subjected to racial profiling by a member of the House of Representatives:**

I. Defendant unlawfully directed a Federal employee from his Congressional staff to engage in multiple acts of racial profiling regarding Plaintiff, in spite of Plaintiff's efforts to avoid the subject matter and attempt instead to obtain information related to the debating of campaign-related issues. These exchanges took place by e-mails and will be presented as evidence.

**Supporting Factual Allegations:**

A) Defendant engaged in unlawful, unconstitutional and unwelcome activities by directing a Federal employee under his authority to probe into matters directly related to Plaintiff's ethnicity for subsequent use in alarmist, misleading campaign fundraising materials, denying Plaintiff the right to engage in the debate of ideas.

B) Defendant ordered his campaign staff to produce and circulate a fundraiser letter highlighting Plaintiff's ethnicity in alarmist, negative overtones. Such document was mailed to his constituents and supporters, and included false and knowingly misleading statements related to his positions on immigration and his personal background.

C) Defendant considered Plaintiff enough of a threat to his political power by planning, writing, printing and mailing an alarmist, misleading fundraiser letter citing him as a cause of concern for a primary election victory, yet he denied the Plaintiff the right to exchange and debate on campaign related issues that are of interest and concern to District voters.

## REQUEST FOR RELIEF

Plaintiff requests the following relief:

1) A trial by a jury of peers.

2) An order restraining the Defendant and his associates from making any further misleading, slanderous and false statements about my campaign platform and / or personal character, as well as continuing to disseminate private / personal information he obtained through the investigation conducted against me by the US Capitol Police in violation of my privacy rights.

3) Plaintiff believes that a good reputation is priceless, and that the only tool of trade he has to find work as a media and political consultant is his reputation. Plaintiff asks the Court to determine what damages, if any, in an amount to be determined by a trial by jury of peers, Defendant ought to pay to Plaintiff for injuries to his personal and professional reputation, for lost past, present, and future income, as well as for extreme embarrassment and emotional distress. This is based on the unique and delicate nature of political consulting and the enormously negative impact of the derogatory comments made by Defendant in his capacity as a United States Congressman and by his associates regarding Plaintiff's reputation.

4) An order directing Defendant to validate the claims being by his classmates about his race-based altercations and traumas involving Mexican nationals at *Holy Family High School*, stating that they are factual and true and that indeed he has been pursuing personal revenge against Mexicans since High School. Plaintiff asks that Defendant be ordered to make a public apology for his derogatory, knowingly false statements, punitive immigration policies and his personal agenda against the Mexican people.

5) An order directing Defendant to provide the names of all the students at *Holy Family High School* and the names of all the persons that directly participated in his neighborhood altercations (from both the Italian side and the Mexican side) that led to his emotional traumas, with the purposes of attempting reconciliation among the participants, counseling and closure for the benefit of the community and the advancement of the national debate on immigration reform without the presence of illegal personal agendas, animosity and bias.

6) An order directing Defendant to provide Plaintiff with the names of the media organizations in Colorado and in Washington DC that Defendant directed through his staff and associates to suppress Plaintiff's political campaign, in violation of Plaintiff's rights as a citizen to participate in the established norms and traditions of our Electoral process.

7) An order directing Defendant to identify the names of the political associates from the Republican Party that he directed to defame Plaintiff, in violation of Plaintiff's rights as a citizen to participate in the established norms and traditions of the Electoral process.

8) An order directing Defendant to issue a letter on his Congressional letterhead addressed "To whom it may concern," stating that he met with Plaintiff in his Congressional office in Englewood in October of 2003 and that A) Defendant intended to hire Plaintiff, B) that all exchanges, conversations and meetings, before and during the 2006 campaign cycle have been cordial, and that C) Plaintiff has not threatened him in any way. The letter must also state that in all the meetings Defendant held with Plaintiff, Plaintiff was always courteous, professional and respectful of Defendant and his staff.

9) Plaintiff asks the Court to direct the jury of peers to identify any other mechanisms available to Defendant in order to make Restitution to Plaintiff with the purpose of restoring Plaintiff's reputation in order to remove present obstacles to his ability to find work.

Date: 10-17-2006

_____
(Plaintiff's Original Signature)

POB 271147
(Street Address)

Littleton CO 80127
(City, State, ZIP)

720.490.1425
(Telephone Number)